## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

**JESSICA RADEMAKERS f/k/a**
**JESSICA SCHIPANSKY,**

    **CASE NO.:**

   **Plaintiff,**

**V.**

**MICHAEL SCOTT, in his official capacity**
**As SHERIFF OF LEE COUNTY,**

   **Defendant.**

_____/

## COMPLAINT FOR RELIEF AND DEMAND FOR JURY TRIAL:
## INJUNCTIVE RELIEF SOUGHT

Plaintiff, Jessica Rademakers f/k/a Jessica Schipansky (hereinafter "Rademakers"), a female, sues the Defendant, Michael Scott, in his official capacity as Sheriff of Lee County (hereinafter "Lee County"); and alleges:

### JURISDICTION

1. This Court has jurisdiction of Plaintiff's Title VII claims by virtue of 28 U.S.C. §§ 1331 and 1343; and 42 U.S.C. § 2000e-5. This Court has jurisdiction over Plaintiff's 42 U.S.C. § 1983 claims pursuant to 28 U.S.C. §§ 1331 and 1334. This Court has supplemental jurisdiction of Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

### THE PARTIES

2. Rademakers is a female citizen of the United States and was employed by Defendant in Lee County, Florida at all times material hereto.

3. Defendant MICHAEL SCOTT was the duly elected Sheriff of Lee County, Florida.

As such, he is and was the policymaker responsible for hiring, firing, training, supervising, and disciplining his deputies. Furthermore, pursuant to Section 30.07, Florida Statutes, he is also responsible for the acts and neglect of his deputies.

4. In addition, Defendant is a public employer maintaining offices for the transaction of its ordinary business in Lee County, Florida, and regularly employs more than 15 employees.

5. At all times material, Defendant was Rademakers' "employer," as contemplated by 42 U.S.C. § 2000e-2(a)(1), and Florida Statutes § 760.02(7).

6. Rademakers is a "person aggrieved" by the unlawful conduct of the Defendant, as contemplated by 42 U.S.C. § 2000e-5(f)(1) and an "aggrieved person" as contemplated by Florida Statutes § 760.02(10).

### PLAINTIFF'S COMPLIANCE WITH ADMINISTRATIVE PREREQUISITES

7. Plaintiff has timely complied with all legally required administrative prerequisites prior to initiating this action.

8. Specifically, Plaintiff timely filed her charge of gender discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC) on or about December 6, 2006, bearing EEOC Charge No.510-2007-01218.

9. A copy of Plaintiff's charge was dual-filed with the Florida Commission on Human Relations (FCHR) on or about December 6, 2006. Additionally, the charge was considered to be dual filed, pursuant to the Work Sharing Agreement between the FCHR and the EEOC.

10. All allegations in Plaintiff's Complaint are like or related to the allegations contained in the charge of discrimination filed with the EEOC and FCHR, or are violations that the EEOC or FCHR was, or would have been, able to ascertain in the course of a reasonable investigation of Plaintiff's charge of discrimination, or involve allegations of retaliation based on the filing of

2

such charges.

11. Thereafter, on August 7, 2007, and again on September 4, 2007, the EEOC issued a "Dismissal and Notice of Rights."

12. Plaintiff thereafter timely filed this action in the United States District Court for the Middle District of Florida within ninety (90) days of her receipt of the above referenced "Dismissal and Notice of Rights."

13. As is contemplated by §760.11(8) of the Florida Statutes, the Florida Commission on Human Relations has failed to conciliate or determine whether there is reasonable cause on the Plaintiff's Complaint and Charges of Discrimination referred to in paragraphs 9 and 10 of this Complaint within 180 days of the filing of said charges.

## GENERAL ALLEGATIONS

14. Plaintiff is the victim of continuing discriminatory and retaliatory employment practices by Defendant because of her sex and opposition to unlawful discrimination and harassment by Defendant's employees and/or agents.

15. Rademakers has been employed with Defendant since December 1999 in various positions throughout the Sheriff's Office, most recently as Hostage Negotiator and Corporal Detective.

16. At all times material, Rademakers performed her job with Defendant in at least a satisfactory manner, and was in all respects qualified to perform her job duties.

17. In fact, throughout her law enforcement career, Rademakers received several honors and awards.

18. On or about May 30, 2006, Rademakers attended a retirement party for a retired Lee County Sheriff's Office Captain, Dennis Brooks, which was held at a local restaurant

establishment.

19. During this event, Chief Deputy Ferrante, Plaintiff's superior, situated himself next to Plaintiff and attempted to engage her in conversation.

20. Although Chief Deputy Ferrante initially started the conversation discussing work, he soon changed the tenor of the conversation and began telling Plaintiff about his sexual exploits.

21. Specifically, Chief Deputy Ferrante told Plaintiff now that he separated from his wife, he just had playmates and he was tired that night because "[he]had sex with two (2) girls all weekend." Then he began questioning Plaintiff about her sexual preferences.

22. Plaintiff became extremely uncomfortable with the conversation and excused herself. Plaintiff returned to her seat when she saw Chief Deputy Ferrante engaged in conversation with someone else.

23. Eventually, Chief Deputy Ferrante returned to Plaintiff to engage her in conversation again and this time Ferrante propositioned Plaintiff for sex asking her if she wanted to be one of his playmates and if she had any friends that would like to be a second playmate. He also asked if she had a problem with a second female.

24. Plaintiff managed to avoid answering his questions and was attempting to politely reject his advances considering his position as Chief Deputy and she expressed she was not interested in Ferrante sexually. Finally, Ferrante received a telephone call and left the area.

25. While Chief Ferrante was gone, Plaintiff told Captain Hollan and Lt. Falk about Chief Ferrante's sexual advances and proposition of sex. Plaintiff expressed she was uncomfortable with the situation.

26. A short while later, while Plaintiff was engaged in conversation, Chief Deputy

Ferrante walked up behind Plaintiff, put his arm around her waistline and leaned into her while rubbing her arm and whispering in her ear whether he could call her.

27. In an attempt to politely reject Ferrante's advances again, but refusing to give him her personal cellular phone number, Plaintiff told him he has the Intranet (Lee County Sheriff's Office Computer Server) which has all employee telephone numbers and contact information.

28. Plaintiff again told Lt. Falk about Ferrante's advances and Falk assured Plaintiff that she would take care of this situation with Captain Hollan if anything else happened.

29. On or about June 11, 2006, Plaintiff left for a hostage negotiation conference with several other people from her team. One of her team members, Todd Garrison, received a call that upon his return from the conference, he must report to Chief Ferrante's office.

30. On or about June 19, 2006, Garrison met with Chief Ferrante. Upon information and belief, Chief Ferrante told Garrison that Plaintiff was a "horrible slutty" person and Garrison better stay away from Plaintiff because an Internal Affairs investigation was going to commence and he would hate to see Garrison attached to someone who would cause him embarrassment.

31. On June 28, 2006, Plaintiff was notified that Chief Deputy Ferrante initiated an Internal Affairs investigation against her.

32. On June 13, 2006, and again on August 3, 2006, Plaintiff was treated unfairly, harassed, intimidated and threatened prior to and during her interviews with Defendant, including but not limited to:

a. intimidation when warned prior to her interview to "go along with everything and you will be okay;"

b. ordered to take a polygraph but initially refused Plaintiff's request for representation;

5

c. although plaintiff initially refused to take the polygraph, Lt. Robert Sherry told her "if you don't take the polygraph, I will add charges to your internal affairs investigation including insubordination, which will mean termination." Plaintiff felt threatened and intimidated as she was present with four superiors but no representation on her behalf;

d. during Plaintiff's pre-interview of the polygraph, Cpl. Cootware interrogated Plaintiff by asking highly inappropriate questions designed to intimidate, harass and embarrass her such as sexual orientation and preferences, preferred sexual positions, and sexual history;

e. Cpl. Cootware repeatedly coaxed, badgered and even threatened Plaintiff to change her statement about what happened, but Plaintiff refused. Upon her refusal, Cpl. Cootware began yelling at Plaintiff and telling her that he had enough to fire her right there so doesn't she want to change her statement.

33. On August 9, 2006, Plaintiff's Police Benevolent Association representation, Cecil Pendergrass, informed Plaintiff the IA investigation was complete and she would be fired; however, Plaintiff's resignation would be accepted.

34. To preserve her dignity, Plaintiff felt forced to resign.

**COUNT ONE**
**VIOLATIONS OF TITLE VII**

35. Plaintiff reincorporates paragraphs 1 through 34 as fully as if realleged herein.

36. This count seeks relief against Defendant under Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981a, for intentional violations of 42 U.S.C. § 2000e-2(a)(discrimination) and § 2000e-3(a)(retaliation).

37. In violation of 42 U.S.C. § 2000-2(a), the Defendant discharged and/or otherwise

discriminated against Plaintiff because of her gender with respect to the terms, conditions or privileges of employment by the actions summarized as follows (and which are more particularly described paragraphs 20-24, 27, 31-33):

    a. Subjecting Plaintiff to unwanted and unsolicited verbal sexual advances by her superior;

    b. Propositioning Plaintiff for sex;

    c. Initiating false Internal Affairs investigation on trumped up charges against Plaintiff after she rejected the sexual advances and proposition for sex by her superior;

    d. Intimidating, harassing, badgering and threatening Plaintiff during her interrogation;

    e. Forcing Plaintiff to resign.

38. In discriminating against Plaintiff, Defendant acted with malice or reckless disregard for Plaintiff's protected rights.

39. As a direct and proximate result of Defendant's violation of Title VII of the Civil Rights Act of 1964, Plaintiff has suffered lost wages and benefits, severe emotional distress, emotional pain, suffering, inconvenience, mental anguish and non-pecuniary losses.

WHEREFORE, Plaintiff respectfully requests a jury trial on all issues and relief as follows:

    a. Compensation for all compensatory damages allowed by law;

    b. An award of reasonable attorney's fees and costs;

    c. Payment for future lost wages and damages;

d.     Interest; and

e.     Such other additional equitable and legal relief as may be just and proper, including the promotion or placement of Plaintiff.

## COUNT TWO
## PROPERTY AND LIBERTY INTEREST VIOLATIONS

40.  Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 34, as if fully set forth herein.

41.  Defendant, through its agents and employees, acting within their authority and under color of state law, instituted and followed policy, procedures, practices and/or customs which directly resulted in discrimination against Plaintiff, contrary to 42 U.S.C. §1983.

42.  The due process clause of the Fourteenth Amendment of the U.S. Constitution protects Plaintiff's liberty interest in her good name and reputation and Plaintiff's property interest in her right to engage in her chosen vocation as police officer.

43.  Between about June 28, 2006, and continuing through the present date, Plaintiff has been deprived of her liberty and property interests without due process of law by known and unknown persons employed by the Defendant who have placed false statements of a stigmatizing nature in Plaintiff's file, which is a public record, attending Plaintiff's termination of employment.

44.  The Defendant effectively deprived Plaintiff of her right to a name clearing hearing by failing to notify her of her right to such a hearing and by failing to offer her such a hearing, despite an affirmative duty to give such a notice and offer such a hearing.

45.  As a result of Defendant's discriminatory conduct toward Plaintiff, Plaintiff has incurred lost wages and fringe benefits, and she will continue to incur those losses in the future.

46. As an additional consequence of the unconstitutional acts described in this count, Plaintiff has suffered and will continue to suffer damage to her reputation, embarrassment, humiliation, loss of earnings, and loss of the ability to enjoy life.

47. Plaintiff has retained attorneys to represent her in this action who are entitled to a reasonable fee for their services.

WHEREFORE, Plaintiff respectfully requests a jury trial on all issues and relief as follows:

        a.    Compensation for all compensatory damages allowed by law;

        b.    An award of reasonable attorney's fees and costs;

        c.    Payment for future lost wages and damages;

        d.    Interest; and

        e.    Such other additional equitable and legal relief as may be just and proper, including the promotion or placement of Plaintiff.

## COUNT THREE
## VIOLATIONS OF THE FLORIDA CIVIL RIGHTS ACT

48. Plaintiff reincorporates paragraphs 1 through 34 as fully as if re-alleged herein.

49. In violation of the Florida Civil Rights Act, §760.01 *et seq.,*, the Defendant discharged and/or otherwise discriminated against Plaintiff because of her gender with respect to the terms, conditions or privileges of employment by the actions summarized as follows (and which are more particularly described paragraphs 20-24, 27, 31-33):

        a.  Subjecting Plaintiff to unwanted and unsolicited verbal sexual advances by her superior;

        b.  Propositioning Plaintiff for sex;

9

    c.  Initiating false Internal Affairs investigation on trumped up charges against Plaintiff after she rejected the sexual advances and proposition for sex by her superior;

    d.  Intimidating, harassing, badgering and threatening Plaintiff during her interrogation;

    e.  Forcing Plaintiff to resign.

50. The discriminating treatment of Plaintiff based upon her gender created an abusive and dangerous working environment, negatively affecting the psychological well-being of Plaintiff.

51. Defendant acted through its employees and/or agents when it permitted the discriminatory practices to exist.

52. In discriminating against Plaintiff, Defendant acted with malice or reckless disregard for Plaintiff's protected rights.

53. As a direct and proximate result of Defendant's violation of the Florida Civil Rights Act, Plaintiff has suffered lost wages and benefits, severe emotional distress, emotional pain, suffering, inconvenience, mental anguish and non-pecuniary losses.

WHEREFORE, Plaintiff respectfully requests a jury trial on all issues and relief as follows:

    a.  Compensation for all compensatory damages allowed by law;

    b.  An award of reasonable attorney's fees and costs;

    c.  Payment for future lost wages and damages;

    d.  Interest; and

    e.  Such other additional equitable and legal relief as may be just and proper,

including the promotion or placement of Plaintiff.

DATED this 5th_ day of November, 2007.

Respectfully submitted,

By:  \s Frank M. Shooster

_____

Frank M. Shooster
Florida Bar No.: 358045
SHOOSTER KAHN & KLEINMAN
Attorneys for Plaintiff
777 South State Road 7
Margate, Florida 33068
Telephone: (954) 969-3900
Facsimile: (954) 969-3911
FrankS@globalresponse.com