UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

Jessica Rademakers,                                                    Case No. 2:07-cv-718

               Plaintiff,

v.                                                                     **MEMORANDUM AND ORDER**

Mike Scott, in his capacity as
Sheriff of Lee County,

               Defendant.

---

This matter is before the Court on Defendant's Motion for Summary Judgment. For the reasons that follow, that Motion is granted.

**BACKGROUND**

Plaintiff Jessica Rademakers (formerly known as Jessica Schipansky) was a detective and hostage negotiator for the Lee County Sheriff's Department from 1999 until 2006. Defendant Mike Scott is the Lee County Sheriff. Rademakers's claims arise out of a May 2006 party to celebrate the retirement of a Sheriff's Department Captain. At this party, Rademakers contends that Chief Deputy Charles Ferrante propositioned her and made several inappropriate sexual comments to her. She complained about Ferrante's behavior to Captain Jeff Hollan and Lieutenant Kim Falk, who were also in attendance at the party. Scott contends that several Sheriff's Department employees complained that Rademakers, Hollan, and Falk engaged in inappropriate behavior at the party.

At some point thereafter, the Sheriff's Department began to investigate the conduct of Rademakers, Hollan, and Falk at the party. According to Rademakers, Ferrante initiated the investigation. As evidence of this, she points to the Preliminary Report of the investigation, which lists Ferrante as the complainant. (Pl.'s Opp'n Mem. Ex. 14.) According to Scott, the district commander, Captain Brad Gossman, made a complaint about the conduct of Rademakers, Hollan, and Falk at the party and thus initiated the investigation. (Gossman Aff. ¶ 5.) Scott maintains that it was Ferrante's duty as Chief Deputy to authorize the investigation, but he did not initiate it.

In the course of the investigation, the investigating officer asked Rademakers to take a polygraph test. She initially refused, but eventually took the polygraph test. She contends that the polygraph examiner asked inappropriate questions and that the demand that she take a polygraph test was calculated to intimidate her. The results of the polygraph, which Rademakers argues are unreliable, showed that Rademakers's responses were not truthful. Before the investigation concluded, Rademakers resigned, ostensibly because she learned that she was going to be fired.

**DISCUSSION**

**A.    Standard of Review**

Summary judgment is proper only if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to

2

the nonmoving party. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). Nevertheless, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Celotex, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1.).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials and must do more than simply show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

**B.    Sexual Harassment Claim**

Rademakers concedes that her sexual harassment claim is not a hostile work environment claim but rather a claim that she suffered sexual harassment that culminated in a tangible employment action. See, e.g., Virgo v. Riviera Beach Assocs., Ltd., 30 F.3d 1350, 1361 (11th Cir. 1994) (listing elements of quid pro quo sexual harassment claim, including that the harassment "affected tangible aspects of the [complaining] employee's . . . terms, conditions or privileges of employment"). She contends that she suffered two tangible employment actions as a result of the alleged sexual harassment by Ferrante: the internal

3

affairs investigation and constructive discharge.

Rademakers offers no citations to support her contention that an investigation into alleged employee misconduct can constitute an adverse employment action for the purposes of a Title VII sexual harassment claim.[1] Under relevant Supreme Court authority, "a tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus. v. Ellerth, 524 U.S. 742, 751 (1998).  An investigation into alleged misconduct, even one that is a "sham," as Rademakers alleges, does not constitute a tangible employment action for the purposes of Title VII. See, e.g., Mack v. Strauss, 134 F. Supp. 2d 103 (D.D.C. 2001) (finding that "mere investigations by plaintiff's employer cannot constitute an adverse employment action because they have no adverse effect on plaintiff's employment").  Moreover, an employer must be permitted to investigate allegations of employee misconduct without facing the possibility that the investigated employees will bring a lawsuit.  The Internal Affairs investigation did not constitute an adverse employment action.

Neither can Rademakers show that she was constructively discharged.  "[To] successfully claim constructive discharge, a plaintiff must demonstrate that working

---

[1] Rademakers's claims of sexual harassment and retaliation are brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et. seq., and the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.01 et seq.  Title VII and FCRA claims are evaluated in the same manner. Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385, 1387 (11th Cir. 1998); Ranger Ins. Co. v. Bal Harbour Club, Inc., 549 So. 2d 1005, 1009 (Fla. 1989).

conditions were 'so intolerable that a reasonable person in her position would have been compelled to resign.'" Poole v. Country Club of Columbus, 129 F.3d 551, 553 (11th Cir. 1997) (quoting Thomas v. Dillard Dep't Stores, Inc., 116 F.3d 1432, 1433-34 (11th Cir. 1997)). In Poole, the court determined that the plaintiff had established constructive discharge because she presented evidence that she was "[s]tripped of all responsibility, given only a chair and no desk, and isolated from conversations with other workers." Id. Rademakers has presented no evidence of her working conditions during the Internal Affairs investigation. Rather, she argues that merely because she was told that Scott was planning to fire her, she was forced to resign. These facts simply do not establish that Rademakers's employment conditions were "so intolerable" that she was "compelled" to resign. See Venero v. City of Tampa, Fla., 830 F. Supp. 1457, 1459 (M.D. Fla. 1993) (Kovachevich, J.) (finding police officer's resignation voluntary even when officer was faced with choice between termination and resignation).

Because Rademakers cannot show a tangible employment action, both her Title VII and her Florida Civil Rights Act sexual harassment claims fail as a matter of law.

**C.     § 1983 Claim**

Rademakers's claim under § 1983 is that she was deprived of her liberty interest in her good name, honor, and integrity without due process of law. (Pl.'s Opp'n Mem. at 15.) The results of the Internal Affairs investigation were put into Rademakers's personnel file, which she contends establishes a genuine issue of material fact as to whether she was deprived of a liberty interest. See Buxton v. City of Plant, Fla., 871 F.2d 1037, 1045-46

5

(11th Cir. 1989) (holding "that the presence of stigmatizing information placed into the public record by a state entity . . . constitutes sufficient publication to implicate the liberty interest under the due process clause"). According to Rademakers, because she was deprived of a liberty interest, the Sheriff's Department was required to provide her with a name-clearing hearing and to inform her of the right to a name-clearing hearing, either prior to or immediately after the liberty-interest deprivation. She contends that her due process rights were violated because she was never informed that she had the right to a name-clearing hearing.

At first glance, it appears that Buxton is on all fours with the present case. In Buxton, a police officer was terminated for allegedly abusing an arrestee and the results of the police department's investigation into the officer's conduct were placed into the terminated officer's personnel file. Id. at 1037. Under Florida law, a police officer's personnel file is a public record. Fla. Stat. § 119.07. The Buxton court reversed the district court's grant of summary judgment to the department on the officer's § 1983 claim, finding that "a public employer is required to provide the opportunity for a post-termination name-clearing hearing when stigmatizing information is made part of the public records, or otherwise published. Notice of the right to such a hearing is required." Buxton, 871 F.2d at 1046. Because there is a question as to whether Rademakers knew or should have known that the Sheriff's Department procedures provided the opportunity for a name-clearing hearing, it would appear that she has raised a question of fact on her § 1983 claim. Compare Venero, 830 F. Supp. at 1460 (finding that police officer with 26 years' experience had constructive notice

of post-termination hearing options), with Buxton, 871 F.2d at 1046 (officer with less than 2 years' experience was entitled to notice of post-termination hearing options).

However, Buxton differs from this case in one important detail: the police officer in Buxton was terminated. Id. at 1038. The Buxton court noted the requirements for finding a deprivation of a liberty interest: "(1) a false statement (2) of a stigmatizing nature (3) attending a governmental employee's discharge (4) made public (5) by the governmental employer (6) without a meaningful opportunity for employee name clearing." Id. at 1042-43 (emphasis added). Because Rademakers voluntarily resigned, she has not established that she was deprived of any liberty interest. Thus, the fact that she was not informed of the opportunity for a name-clearing hearing is not dispositive. Rademakers's § 1983 claim fails as a matter of law.

**D.     Retaliation**

To establish a prima facie case of retaliation under Title VII, Rademakers must prove that: (1) she engaged in statutorily protected activity; (2) she was subjected to an adverse employment action; and (3) the employment action was causally related to the protected activity. Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000).

If Rademakers succeeds in establishing a prima facie case of retaliation, the burden shifts to Scott to state a legitimate, non-retaliatory reason for the action. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973); Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1297 (11th Cir. 2006). If Scott succeeds, Rademakers must then show that the reason was a pretext for retaliation. McDonnell Douglas, 411 U.S. at 804;

Hurlbert, 439 F.3d at 1297.

Scott argues that Rademakers's retaliation claim fails because she cannot show that an adverse employment action was taken against her and she cannot show any causal connection between any adverse action and the allegedly protected activity. Rademakers claims two different adverse employment actions: the investigation itself and the polygraph test. As noted previously, she offers no citations to support her contention that an investigation into employee conduct can constitute an adverse employment action for the purposes of a Title VII claim. Although the Supreme Court has lowered the threshold for establishing an adverse employment action with respect to a retaliation claim, the Court did not eliminate the adverse employment action requirement. Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 67 (2006). An investigation into alleged misconduct is not such adverse employment action and cannot support Rademakers's retaliation claim.

Similarly, although Rademakers contends that she was bullied into taking the polygraph test and that the test administrator asked her inappropriate questions before and during the test, she does not explain how any of this rises to the level of an adverse employment action. Rademakers must come forward with facts that support her argument that she suffered some sort of material, adverse employment action. See Ellis v. England, 432 F.3d 1321, 1327 (11th Cir. 2005) (citations omitted) ("Mere conclusions and unsupported factual allegations . . . are insufficient to withstand a motion for summary judgment."). She has failed to do this, and therefore the motion for summary judgment on her retaliation claim is granted.

**CONCLUSION**

Defendant is entitled to summary judgment on all of the claims in the Complaint. According, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Docket No. 21) is **GRANTED** and this matter is **DISMISSED with prejudice**.

**The Clerk shall enter judgment accordingly, terminate all remaining deadlines as moot, and close the file.**

Dated: <u>Thursday, January 22, 2009</u>

<u>*s/ Paul A. Magnuson*</u>
Paul A. Magnuson
United States District Court Judge
